UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MARTIN HINCKLEY, JR., et al.,                    DECISION AND ORDER

                              Plaintiffs,        16-CV-6118 CJS

        -v-

SEAGATE HOSPITALITY GROUP, LLC,
CANANDAIGUA HOTEL CORPORATION,
and THOMAS A. BLANK, individually and
as Chief Executive Officer of Canandaigua
Hotel Corporation,
                              Defendants.

---

APPEARANCES

For Plaintiffs:            Robert L. Mullin, Esq.
                           Ferr and Mullin
                           7635 Main Street, P.O. Box 440
                           Fishers, New York 14453

                           Justin M. Cordello, Esq.
                           Cordello Law PLLC
                           693 East Avenue, Suite 220
                           Rochester, New York 14607

For Defendants:            Stephen J. Jones, Esq.
                           Nixon Peabody LLP
                           1300 Clinton Square
                           Rochester New York 14604

INTRODUCTION

    This is an action asserting claims under the Federal Fair Labor Standards Act

("FLSA") and the New York Labor Law ("NYLL").  Now before the Court are Defendants'

motion (Docket No. [#14]) to dismiss the Amended Complaint and Plaintiff's motion for

conditional certification of an FLSA collective action.  Defendants' motion to dismiss is

granted in part and denied in part, and Plaintiff is granted leave to re-plead certain claims. Plaintiff's motion for conditional certification is granted in part.

BACKGROUND

The following facts are taken from the Amended Complaint [#13] and are assumed to be true for purposes of this Decision and Order.  Plaintiff, Martin Hinckley, Jr. ("Hinckley"), is a former seasonal employee of The Inn on the Lake in Canandaigua, New York ("the Inn").  The Inn is a hotel, restaurant and banquet facility that is owned by defendant Canandaigua Hotel Corporation, which in turn is owned by defendant Seagate Hospitality Group, LLC.  Defendant Thomas Blank ("Blank") is the CEO of Canandaigua Hotel Corporation.  The Inn employed Hinckley as an "hourly banquet service worker."[1]  The Inn treated Hinckley as a tipped employee, and calculated his pay utilizing the "tip credit." Hinckley filed this action on behalf of himself and "similarly situated hourly banquet service workers and hourly tipped employees and other hourly employees who work or have worked" at the Inn.[2]

The Amended Complaint asserted eight separate causes of action, though Hinckley now concedes that the Seventh Cause of Action may be dismissed. Of the remaining seven claims, Defendants contend that the Second, Fourth, Fifth and Sixth causes of action should be dismissed entirely.[3]  Defendants further contend that Blank is not a proper party to this action, and that Hinckley lacks standing to pursue claim claims on behalf of any employees other than banquet workers.  Otherwise, Defendants do not presently move against the First,

---

[1]Amended Complaint [#13] at p. 1.

[2]Amended Complaint [#13] at p. 1.

[3]*See*, Defs. Memo of Law [#14-1] at p. 2

Third or Eighth causes of action.  Accordingly, the Court will focus its attention on the Second, Fourth, Fifth and Sixth Causes of Action, the claims against Blank, and the proposed class definitions.

Hinckley's Second Cause of Action alleges that Defendants violated the FLSA, § 216(b), "by failing to correctly calculate the regular rate of pay used to calculate the overtime rate," and also by "willfully fail[ing] to [pay Hinckley] for all work performed in excess of 40 hours in a workweek."[4]  As part of this claim, Hinckley maintains that he worked during periods, such a meal breaks, which Defendants did not include when calculating his pay hours.  Additionally, with regard to calculation of the overtime rate of pay, Plaintiff contends that the Inn incorrectly calculated the rate as one and one-half times the minimum wage *less the tip credit*, rather than one and one-half times the minimum wage.

Hinckley's Fourth Cause of Action alleges that Defendants violated the NYLL in three respects: They paid sub-minimum wages, they "failed to provide written notice of the tip credit allowance," and they "failed to provide . . . wage statements that complied with the NYLL."[5]

Hinckley's Fifth Cause of Action alleges that Defendants violated the NYLL, § 195-1(a), by failing to provide employees, at the time of hiring and at any time the wage rate changed, with a written "notice containing, among things, [the] employee's rate of pay and allowances paid."[6]

---

[4]Amended Complaint [#13] at ¶ 142.

[5]Amended Complaint [#13] at ¶ ¶  149-153.

[6]Amended Complaint [#13] at ¶ ¶  157-159.

Hinckley's Sixth Cause of Action alleges that Defendants violated the NYLL and a related regulation, 12 NYCRR § 146-1.6, by failing to pay employees "an additional hour of pay at the minimum wage for each day [the employees] had a spread of hours in excess of ten hours."[7]

On June 17, 2016, Defendants filed the subject motion [#14] to partially dismiss the Amended Complaint. With regard to the Second Cause of Action, Defendants maintain that the Amended Complaint fails to state an overtime claim under the FLSA because it contains no facts concerning the alleged dates and times when Hinckley performed overtime work for which he was not paid. For this same reason, Defendants contend that the portion of the Second Cause of Action alleging that Defendants paid the wrong overtime *rate* fails, since the overtime rate is irrelevant if Hinckley did not actually work more than forty hours in a given pay period. With regard to the portion of the Fourth Cause of Action alleging that Defendants failed to provide Hinckley with proper wage statements (pay stubs), Defendants contend that Amended Complaint fails to state a claim for two reasons: Hinckley lacks standing to bring such a claim, and Defendants provided him with proper wage statements in any event. Alternatively, Defendants contend that even if they failed to provide Hinckley with proper wage statements, the Court should convert their motion to one for summary judgment, and grant them summary judgment, since NYLL provides an affirmative defense (regarding wage-statement violations) to employers who have nevertheless made "complete and timely payment of all wages due." With regard to the Fifth Cause of Action, and part of the Fourth Cause of Action, Defendants maintain that the Amended Complaint fails to state

---

[7]Amended Complaint [#13] at ¶ ¶ 162-163.

4

a claim involving Defendants' alleged failure to provide Hinckley with a notice of his wage rate and their intention to take a tip credit, for two reasons: The NYLL does not provide a private right of action for an employee who is not given the required notice annually; and Defendants provided Hinckley with the proper notice in any event.  With regard to the Sixth Cause of Action, alleging a "spread of hours" claim under the NYLL, Defendants maintain that the Amended Complaint fails to state a claim because Hinckley does not allege "any detail" concerning the alleged violation, such as "his work schedule, the amount of time, if any, between shifts, or when or how he allegedly was not paid for spread of hours."[8] Defendants also contend that the Amended Complaint fails to state a claim against Mr. Blank, under either the FLSA or NYLL, since it fails to plausibly allege that Blank meets the definition of an "employer" under those statutes. Lastly, Defendants contend that while Hinckley's Amended Complaint purports to assert claims on behalf of three classes of employees -- banquet service workers, hourly tipped workers and hourly tipped sub-minimum wage workers -- Hinckley cannot state a claim on behalf of the latter two categories of workers since he only worked as banquet server, and therefore lacks standing to represent the other two classes.

On August 12, 2016, Hinckley filed an opposition [#24] to the motion to dismiss, and on August 31, 2016, Defendants filed a reply [#25].

Hinckley has also filed a motion [#17] for conditional certification of an FLSA collective action, pertaining to the First Cause of Action (FLSA Minimum-wage Claim) and Second Cause of Action (FLSA Overtime Claim).  Defendants oppose the application. *See*, Docket No. [#26].

---

[8]Defs. Memo of Law [#14-1] at p. 16.

On October 20, 2016, counsel for the parties appeared before the undersigned for oral argument.

STANDARDS OF LAW

*Motion to Dismiss*

Defendants have moved to dismiss the Amended Complaint for failure to state a claim, and the standard for such motions is well settled:

> Federal Rule of Civil Procedure [("Fed. R. Civ. P.")] 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007); *see also, ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir.2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.' ") (*quoting Bell Atl. Corp. v. Twombly* ) (footnote omitted).

When applying this "plausibility standard," the Court is guided by "two working principles":

First, although a court must accept as true all of the allegations contained in a complaint,[9] that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss, and determining whether a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations and internal quotation marks omitted).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 1950 (2009) (citation omitted).

<u>Alternative Motion for Summary Judgment</u>

With regard to the wage-statement claim, Defendants have moved, in the alternative, to have the Court convert their motion to dismiss to a motion for summary judgment. Federal Rule of Civil Procedure 12(d) provides that if, "on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment."  A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  However, the Court is not required to consider matters outside the pleadings simply because the movant asks it to do so. *See, Vail v. City of New York*, 68 F.Supp.3d 412, 420 (2d Cir. 2014)

---

[9]The Court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir.1999), cert. den. 531 U.S. 1052, 121 S.Ct. 657 (2000).

("Federal courts have complete discretion in determining whether to exclude material beyond the pleadings or to convert a motion to dismiss into a motion for summary judgment.") (citation omitted).

<u>Motion to Amend in Lieu of Dismissal</u>

Hinckley contends that Defendants' motion lacks merit, but he alternatively requests leave to file a Second Amended Complaint if the Court disagrees with him.   "Under Rule 15(a), leave to amend 'shall be freely given when justice so requires." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (citations omitted).   However, where the application is made in response to a motion to dismiss, "[a] plaintiff need not be given leave to amend if [his application] fails to specify . . . how amendment would cure the pleading deficiencies in its complaint." *Id*. (citations omitted).

DISCUSSION

<u>Second Cause of Action: FLSA Overtime Claim</u>

Hinckley's Second Cause of Action alleges that Defendants violated the FLSA with regard to overtime pay, by failing to pay him for "all work performed in excess of 40 hours in a workweek," and by using an incorrect rate of overtime pay.   Defendants, though, maintain that the Amended Complaint fails to adequately state such a claim, because it contains no facts concerning the alleged dates and times when Hinckley performed overtime work for which he was not paid.   According to Defendants, to plead a sufficient claim under the NYLL and FLSA, "a complaint must, at a minimum, set forth the approximate number of unpaid hours allegedly worked by the plaintiff and the putative class."[10]   For this same

---

[10]Defs. Memo of Law [#14-1] at pp. 13-14.   Although the Court agrees that the overtime claim is deficient, it does not necessarily agree with Defendants that an FLSA plaintiff must allege an approximate number of hours. *See, Ferrera v. Tire Shop Ctr.*, No. 14 CV 04657 FB LB, 2015 WL 3562624, at *3 (E.D.N.Y.

reason, Defendants contend that the portion of the Second Cause of Action alleging that Defendants paid the wrong *rate* for overtime fails, since the overtime rate is irrelevant if Hinckley did not actually work more than forty hours in a given pay period.

Hinckley disputes Defendants' argument, though without citing any authority,[11] and insists that his allegations are sufficient, but requests leave to amend his pleading if the Court disagrees with him.

The Court agrees with Defendants that the overtime claim is deficient.  The FLSA requires that employees who work more than forty hours during a workweek be compensated "at a rate not less than one and one-half times the regular rate at which he is employed" for such excess hours. 29 U.S.C. § 207(a)(1).  In *Humphrey v. Rav Investigative Security Services, Ltd.*, 169 F.Supp.3d 489, 496-497 (S.D.N.Y. 2016),  the Court discussed the Second Circuit's "trilogy" of FLSA overtime-pleading cases, referring to *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106 (2d Cir. 2013) ("*Lundy*"), *Nakahata v. New York Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192 (2d Cir. 2013) ("*Nakahata*") and *DeJesus v. HF Management Servs., LLC*, 726 F.3d 85 (2d Cir. 2013) ("*DeJesus*").  These Second Circuit decisions, which all involved 12(b)(6) motions directed at FLSA overtime claims, indicate that, "in order to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours." *See, e.g., Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d at 88 (quoting *Lundy*, 711 F.3d at 114); *see also, Nakahata*, 723 F.3d at 201 ("To plead a

---

Apr. 6, 2015)  ("An approximation of overtime hours is not needed in all cases, though it "may help draw a plaintiff's claim closer to plausibility.") (citing *Lundy*, 711 F.3d at 114 n. 7), report and recommendation adopted, No. 14-CV-04657 FB LB, 2015 WL 3604078 (E.D.N.Y. June 5, 2015).

[11]Pl. Memo of Law [#24] at p. 19-20.

plausible FLSA overtime claim, Plaintiffs must provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week.").  Regarding this standard, the Circuit Court has further stated:

> [Our] requirement that plaintiffs must allege overtime without compensation in a "given" workweek was not an invitation to provide an all-purpose pleading template alleging overtime in "some or all workweeks." It was designed to require plaintiffs to provide some factual context that will "nudge" their claim "from conceivable to plausible." While this Court has not required plaintiffs to keep careful records and plead their hours with mathematical precision, we have recognized that it is employees' memory and experience that lead them to claim in federal court that they have been denied overtime in violation of the FLSA in the first place. Our standard requires that plaintiffs draw on those resources in providing complaints with sufficiently developed factual allegations.

*DeJesus*, 726 F.3d at 90 (citations omitted).  Applying this standard in *DeJesus*, the Circuit Court held that an assertion, that the plaintiff "worked more than forty hours per week during 'some or all weeks' of her employment," was insufficient. *DeJesus*, 726 F.3d at 86, 89. Similarly, a "general and conclusory allegation as to the number of [overtime] hours 'routinely' worked" is not adequate. *Humphrey*, 169 F.Supp.3d at 496 (citation omitted).

Here, the Amended Complaint's factual allegations concerning the overtime claim are as follows:

> Defendants' policy and pattern or practice failed to correctly calculate the overtime rate of pay of tipped workers and banquet service workers[.] . . . As a result of this pay policy and practice Named Plaintiff and similarly situated employees were not properly compensated for overtime worked over forty (40) hours in a workweek in violation of the FLSA. . . . *On numerous occasions throughout his employment, including during the three (3) years preceding the filing of this action, Named Plaintiff Martin Hinckley, Jr. worked over forty (40) hours in a workweek, thus entitling him to overtime pay* at time-and-a-half his regular rate of pay. . . . However, his overtime rate was improperly computed

> . . . for weeks he worked over forty (40) hours. . . . *The pay and timekeeping*
> *records Defendants are required to maintain for Mr. Hinckley, Jr. will show the*
> *particular workweeks in which Mr. Hinckley, Jr. worked more than forty (40)*
> *hours[.]*

Amended Complaint [#13] at ¶ ¶ 35, 80-83 (emphasis added).   These allegations are

insufficient, as they do "not allege[ ] a single workweek in which [Hinckley] worked at least

40 hours and was also worked uncompensated time in excess of 40 hours." *Lundy*, 711 F.3d

at 114.   Hinckley cannot avoid the obligation to state a plausible claim by merely alleging

that he needs access to Defendants' timekeeping records; rather, as the Second Circuit

stated in *Lundy*,   Hinckley's own "memory and experience" ought to enable him to state a

plausible claim in the first instance.   Accordingly, Hinckley's overtime claim is dismissed.

<u>Fourth Cause of Action: Wage Statement (Pay Stub) Claim</u>

Part of the Fourth Cause of Action alleges that Defendants violated NYLL § 195(3)

by failing to provide Hinckley with proper wage statements (pay stubs). *See*, Amended

Complaint [#13] at ¶ ¶ 111, 153.   The Amended Complaint contends, as an example, that

Hinckley's pay stubs did not properly list the tip-credit allowance being claimed by Inn. *See,*

*id.* at ¶ 111.   Defendants maintain, however, that this portion of the Fourth Cause of Action

fails to state a claim for two reasons: Hinckley lacks standing to bring such a claim; and,

Defendants provided him with proper wage statements.   Alternatively, Defendants contend

that even if they failed to provide Hinckley with proper wage statements, the Court should

convert their motion as to this cause of action to one for summary judgment, and grant them

summary judgment, since NYLL provides an affirmative defense (regarding wage-statement

violations) to employers who have who have nevertheless made "complete and timely

payment of all wages due."

Regarding Hinckley's standing to pursue this claim, Defendants' argument focuses on the fact that the Amended Complaint refers, in passing, to 12 N.Y.C.R.R. § 137-2.2, which, Defendants point out, was repealed effective December 31, 2010.  In particular, Defendants assert that Hinckley began working at the Inn in 2013, after 12 N.Y.C.R.R. § 137-2.2 was repealed, and therefore lacks standing to bring a claim under that regulation. However, Hinckley responds that Defendants' argument on this point lacks merit, since 12 N.Y.C.R.R. § 137-2.2 was replaced by 12 N.Y.C.R.R. § 146-2.3, which "contain[s] a materially identical wage statement requirement,"[12] and the Amended Complaint references both regulations. *See*, Amended Complaint [#13] at ¶ 110 ("Defendants did not comply with NYLL's tip credit provision and the supporting [regulations], including, but not limited to, 12 NYCRR § § 137-2.2 and 146-2.2").   Hinckley further contends that the Fourth Cause of Action  is not seeking to recover for a technical violation of either regulation in any event. Rather, he maintains, the Fourth Cause of Action is asserting a minimum wage violation, based on the theory that Defendants were not entitled to take the tip credit for various reasons, including their failure to provide pay stubs that complied with 12 N.Y.C.R.R. § § 137-2.2 and/or 146-2.2. *See*, Pl. Memo of Law [#24] at p. 17 ("The tip credit is an exception to the rule that allows an employer to legally count a portion of its employee's tips toward its minimum wage obligation *if it complies with all the prerequisites of the tip credit*, including complying with the wage statement requirement[.]") (emphasis added).

Both before and after 2010, the NYLL required employers to include certain information on pay stubs, including any allowance claimed for the tip credit. *See*, NYLL

---

[12]Pl. Memo of Law [#24] at p. 18.

195(3).  Prior to January 1, 2011, this same requirement was set forth in 12 N.Y.C.R.R. § 137-2.2, and after January 1, 2011, it was set forth in 12 N.Y.C.R.R. § 146-2.3.   As Defendants acknowledge, the Amended Complaint refers to all three of these sections of law. *See, e.g.*, Amended Complaint [#13] at ¶ 1.[13]  Defendants assert, though, that Hinckley has no standing to assert claims pursuant to 12 N.Y.C.R.R. § 137-2.2, because he was not employed at the time such regulation was in effect.   However, the Court agrees with Hinckley that Defendants' "standing argument puts form over substance," since the difference between the two iterations of the regulation is "a change in citation only." Furthermore, the wage-statement notice requirement upon which Hinckley relies has also consistently been set forth in NYLL § 195(3).  There is no suggestion that Hinckley's claims, or the claims of the proposed class, depend in any way upon any peculiarity found within 12 N.Y.C.R.R. § 137-2.2 which does not also appear in 12 N.Y.C.R.R. § 146-2.3 or NYLL § 195(3).  Accordingly, Defendants' motion to dismiss the Fourth Cause of Action, based on standing, is denied.

Defendants alternatively contend that the Fourth Cause of Action must be dismissed because the pay stubs that they provided to Hinckley and other employees satisfied the requirements of the NYLL tip-credit provisions.[14]  In particular, Defendants contend that their pay stubs complied with the NYLL's requirement to list "allowances, if any, claimed as part of the minimum wage," since it was "readily apparent from the face of the paystub[s]" that they applied a tip credit allowance:

---

[13]Defs. Memo of Law [#14-1] at p. 8.

[14]*See, e.g.*, Def. Memo of Law [#14-1] at pp. 11-13.

The paystubs at issue here expressly stated both the applicable hourly rate paid to tipped employees during the applicable time period and the amount of tips paid during the pay period.  In addition, [Hinckley] received and signed a wage notice at the time of his hire explicitly stating that his hourly wage was $4.90 per hour, and that the allowance taken for tips would be $2.35 per hour. The tip credit is simply the difference between the applicable minimum wage at the time and the reduced hourly wage paid to tipped employees, and is, therefore, clearly discernible from the face of the paystub.[15]

Hinckley responds that this aspect of Defendants' motion must be denied, since they admit that the subject pay stubs did not expressly set forth the tip credit allowance being taken, as required by 12 NYCRR § § 137-2.2 and 146-2.3.

Hinckley maintains, and the pay stubs submitted by Defendants show, that the subject pay stubs do not identify an "allowance" or "tip credit" as such.  Rather, the pay stubs list two types of "earnings" -- "regular" and "gratuities."  For "regular" earnings, the pay stubs list a "rate" and "hours," while "gratuities" merely appear as a lump sum, without regard to any rate our hours.  Consequently, the Court agrees with Plaintiff that the pay stubs do not expressly "list . . . credits claimed (for tips, meals and lodging) if any," as stated in 12 N.Y.C.R.R. § 146-2.3.   Nevertheless, Defendants essentially assert that they have substantially complied with the regulation, for two reasons: First, because an employee could perform mathematical calculations, using the information on the pay stubs, to determine the tip credit; and second, because when employees were hired they were given a notice that explained the hourly wage and tip credit.

However, to the extent that Defendants are asking the Court to rule, at this stage of the litigation, that their pay stubs satisfy the requirements of the NYLL, the Court declines

---

[15]Def.  Memo of Law [#14-1] at p. 12.

to do so.  In that regard, first and foremost the Court notes that Defendants have not cited any authority supporting their "substantial compliance" argument.   Apart from that, Defendants' arguments are not persuasive.  For example, even performing the calculations suggested by Defendants, using information on the pay stub, an employee would not know the amount of the tip credit being taken; rather, an employee would merely know the sub-minimum-wage hourly rate being used to calculate "regular earnings," along with a lump sum for "gratuities," that could be divided by the total number of hours worked, but which really bears no relationship to the actual tip credit being claimed.  Defendants alternatively suggest that if an employee really wanted to know the tip credit being claimed, he could simply look at the notice that the Inn provided at the time of hire.  While there is of course some appeal to this argument as a practical matter, it ignores the issue of whether Defendants provided proper pay stubs "with every payment of wages," as required by the regulation.  Accordingly, Defendants' motion to dismiss the Fourth Cause of Action for failure to state a claim is denied.

Defendants' alternative request to convert this aspect of their motion to a summary judgment motion is likewise denied.  On this point, Defendants maintain that "even assuming the wage statements are insufficient," they are shielded from liability by NYLL § 198(1-d), which "provides an affirmative defense to employers who have been found to [have] violate[d] the wage statement provisions of NYLL Section 195(3) -- and the identical requirements set forth in the implementing regulations at 12 N.Y.C.R.R. § 146-2.3 – where an employer has made 'complete and timely payment of all wages due.'"[16]  Defendants ask the Court to look beyond the pleadings and consider "irrefutable" evidence that they paid the

---

[16]Defs. Memo of Law [#14-1] at p. 22.

correct amount to Hinckley and other employees, notwithstanding any violation of the statutory wage statement requirements.  Defendants acknowledge that courts generally do not grant summary judgment prior to discovery, but contend that, "here, no amount of discovery would create an issue of fact" on this point.

Hinckley opposes Defendants' alternative motion, because he maintains that Defendants did not make "complete payment of all wages due."  As an example of that, Hinckley contends that Defendants' failure to pay the cleaning costs of his uniforms resulted in him being paid less than the minimum wage (Eighth Cause of Action).  Hinckley further maintains that Defendants failed to pay him the correct overtime rate (Second Cause of Action), though the Court is dismissing that claim with leave to replead.  Hinckley also contends that Defendants' failure to otherwise comply with the tip-credit requirements made them ineligible to take the tip credit, thereby resulting in him being paid less than the minimum wage (First, Third, Fourth and Fifth Causes of Action).

Defendants respond to these arguments in their reply [#25].  For example, Defendants contend that whether Hinckley was paid for cleaning his work uniforms is irrelevant to their ability to claim the affirmative defense under NYLL § 198(1-d).

However, having considered these arguments, the Court declines to consider matters outside of the pleadings for several reasons.  For example, even assuming that Defendants are correct that Hinckley's "uniform cleaning" claim is irrelevant to NYLL § 198(1-d), and even assuming that Defendants do not re-plead the overtime claim,  there still appear to be issues of fact concerning Defendants' ability to utilize the tip credit, which in turn effects whether Defendants paid Hinckley the correct amounts.  Defendants' alternative request for summary judgment on the wage-statement claim is therefore denied.

16

<u>Fifth (and part of Fourth) Causes of Action: Notice of Wage Rate
and Intention to Take Tip Credit.</u>

With regard to the the Fifth Cause of Action, and part of the Fourth Cause of Action,

the Amended Complaint alleges that Defendants violated NYLL § 195-1(a), which states,

in pertinent part:

> Every employer shall:
> 1. (a) provide his or her employees, in writing in English and in the language
> identified by each employee as the primary language of such employee, at the
> time of hiring, a notice containing the following information: the rate or rates
> of pay and basis thereof, whether paid by the hour, shift, day, week, salary,
> piece, commission, or other; allowances, if any, claimed as part of the
> minimum wage, including tip, meal, or lodging allowances;  . . .  plus such
> other information as the commissioner deems material and necessary. Each
> time the employer provides such notice to an employee, the employer shall
> obtain from the employee a signed and dated written acknowledgment, in
> English and in the primary language of the employee, of receipt of this notice,
> which the employer shall preserve and maintain for six years.  . . .  For all
> employees who are not exempt from overtime compensation as established
> in the commissioner's minimum wage orders or otherwise provided by New
> York state law or regulation, the notice must state the regular hourly rate and
> overtime rate of pay[.]

NYLL § 195(1)(a).  It is undisputed that prior to February 2015, § 195(1)(a) required

employers to provide such notice annually, as well as at the time of hire and any time the

wage rate changed, while after February 2015, the statute only required employers to give

such notice at the time of hire and at any time the wage rate changed.  According to the

Amended Complaint, Defendants violated this requirement because, although they provided

the notice to Hinckley (and other employees), they "improperly calculat[ed] the overtime rate

of pay as time-and-a-half the subminimum wage tip credit rate," rather than as time-and-a-

half of the federal minimum wage.[17]   However, Defendants contend that this claim is deficient for two reasons: First, § 195(1)(a) does not provide a private right of action for employees who were not given the required post-hire *annual* notice; and, second, the notice that they provided to Hinckley (and other employees) complies with the statute.

The first issue to consider is whether NYLL § 195(1)(a) provides a private right of action for employees. To begin with, the Court observes that Defendants' argument regarding a private right of action pertains only to the *annual* notice requirement (which only existed prior to February 2015), and not to the requirement to give notice at the time of hire and at the time of any change in pay rate.  In other words, Defendants do not dispute that NYLL § 195(1)(a) allows Hinckley to maintain a private action for alleged violations of the requirement to provide him with the required notice at the time he was hired.

The Court agrees with Defendants, though, that the NYLL does not provide a private right of action where an employer fails to provide annual notices; rather, it only provides such a private right of action where the employer fails to provide the notice at the time of hire. NYLL § 198(1-b); *see also, Guan Ming Lin v. Benihana N.Y. Corp.*, No. 10 CIV. 1335 RA JCF, 2012 WL 7620734, at *8 (S.D.N.Y. Oct. 23, 2012) ("The plain language of the statute, as the defendants argue, confers a private right of action upon those who do not receive their notice at the time of hiring, but not upon those who do not receive it on or before February first of any subsequent year. NYLL § 198(1–b). In contrast, the provision giving the Commissioner of Labor the power to bring an action does not contain any limitations. Therefore, the proper interpretation of NYLL § 198(1–b) is that only employees

---

[17]Amended Complaint [#13] at ¶ 118.

who did not receive a proper wage and hour notice at the time of hiring can sue for a penalty pursuant to § 198(1–b).”), report and recommendation adopted, No. 10 CIV. 1335 RA JCF, 2013 WL 829098 (S.D.N.Y. Feb. 27, 2013); *Yuquilema v. Manhattan's Hero Corp.*, No. 13-CV-461 WHP JLC, 2014 WL 4207106, at *11 (S.D.N.Y. Aug. 20, 2014) (“[T]he NYLL extends this private cause of action to employees whose employer fails to provide the initial notice at their hire, but not for subsequent failures to furnish the annual notice in following years.”) (citing NYLL § 198(1-b)), report and recommendation adopted, No. 13CV461, 2014 WL 5039428 (S.D.N.Y. Sept. 30, 2014); *but see*, *Kress v. Bigsky Techs., LLC,* No. 15-CV-6430, 2016 WL 4184455, at *2 (W.D.N.Y. Aug. 4, 2016).

However, in response to Defendants' argument, Hinckley denies that the Amended Complaint asserts a stand-alone claim for damages based on Defendants' failure to provide annual notices as required by NYLL § 195(1).[18]   Rather, Hinckley indicates that the Amended Complaint references Defendants' failure to provide annual notices because such fact is relevant to the broader minimum wage claim, *i.e.*, that Defendants were not entitled to claim the tip credit *at all* because they failed to comply with the underlying statutory requirements.  Accordingly, to the extent that the Amended Complaint is attempting to assert a claim for damages based on Defendant's failure to provide *annual* notices as required by NYLL § 195(1), such claim is dismissed, but otherwise Defendants' application on this point is denied.

Defendants further maintain that any claim based upon deficient notice under NYLL § 195(1) must be dismissed because the notice that they provided complied with the statute.

---

[18]Pl. Memo of Law [#24] at pp. 11-14.

In particular, Defendants assert that they "utilized a wage notice that explicitly stated the applicable tipped minimum wage and the tip allowance to be taken."[19]  Defendants argue, therefore, that to the extent Hinckley maintains they provided deficient notices at the time of hire or when pay rates changed, or that they were not entitled to take the tip credit because the notices that they provided failed to comply with NYLL § 195(1), such claim must be dismissed.  However, Hinckley plausibly maintains that the Inn's form notice, which has been provided to the Court, fails to comply with NYLL § 195(1) or the accompanying regulation, 12 N.Y.C.R.R. § 146-2.2, in several respects.  For example, Hinckley points out that Defendants' form notice fails to properly calculate the overtime rate, and fails to include language advising tipped employees that they are entitled to additional wages if they do not receive enough tips to bring their pay up to the minimum hourly rates.  Accordingly, this aspect of Defendants' application, which essentially seeks a ruling that the notice they provided complied with NYLL § 195(1), is denied.

Sixth Cause of Action:  Spread-of-Hours Claim

With regard to the Sixth Cause of Action, alleging a "spread of hours" claim under the NYLL, Defendants maintain that the Amended Complaint fails to state a claim because Hinckley does not allege "any detail" concerning the alleged violation, such as "his work schedule, the amount of time, if any, between shifts, or when or how he allegedly was not paid for spread of hours."[20]  Hinckley insists that his allegations are sufficient, but alternatively requests leave to amend if the Court disagrees with him.

---

[19]Defs. Memo of Law [#14-1] at p. 7.

[20]Defs. Memo of Law [#14-1] at p. 16.

The Court agrees with Defendants that the spread-of-hours claim is deficient.  In that regard, the Amended Complaint states, in pertinent part, as follows:

> During the relevant time period, Class members, including Named Plaintiff, worked shifts that exceeded ten hours in length.  Despite NYLL requiring that Defendants provide an additional hour of pay at the basic hourly rate when an employee's length of the interval between the beginning and end of a workday exceeds 10 hours, Defendants did not pay Plaintiffs these wages.

Amended Complaint [#13] at ¶ pare 120-121.  Such vague statements are insufficient to state a plausible claim.  Although Hinckley worked for the Inn over a period of three years, he fails to identify any actual instance when Defendants failed to pay him for a spread-of-hours situation.  Accordingly, the Sixth Cause of Action is dismissed.

<u>Whether Blank is an Employer</u>

Defendants next contend that the Amended Complaint fails to state a claim against Blank, under either the FLSA or NYLL,[21] since it fails to plausibly allege that Blank meets the definition of an "employer" under those statutes.   Hinckley disagrees, citing authority including a prior decision by this Court – *Hart v. Crab Addison, Inc.*, No. 13-CV-6458 CJS, 2014 WL 2865899 at *13 (W.D.N.Y. Jun. 24, 2014) ("*Hart*").[22]

As Hinckley points out, in *Hart* the Court set forth the applicable legal principles as follows:

---

[21]Defendants maintain, and Plaintiff does not dispute, that the standard for pleading an "employer" is the same under either statute.

[22]Defendants also point out that in prior case involving the Inn, *Bundschuh v. Inn on the Lake Hudson Hotels, LLC*, 914 F.Supp.2d 395, 398 (W.D.N.Y. 2012), in which Blank was mentioned,  the Court wrote that, "All Inn personnel, including Burns, ultimately are answerable to the President and Chief Executive Officer of Canandaigua Hotel Corporation, Tom Blank."  However, the Court made that observation in passing as part of a factual recitation in a decision and order involving an unrelated  allegation of employment discrimination, and as such does not believe that it is relevant to this FLSA/NYLL action.

Recently, the Second Circuit clarified the test for determining whether an individual defendant can be held liable as an "employer" under the FLSA. *See, Irizarry v. Catsimatidis*, 722 F.3d 99 (2d Cir. 2013) ("*Irizzary*"). Preliminarily, in *Irizzary* the Second Circuit emphasized that it had "consistently construed the [FLSA] liberally to apply to the furthest reaches consistent with congressional direction." *Id*., 722 F.3d at 103. In that regard, "[t]he Second Circuit has treated employment for FLSA purposes as a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances." *Id*. at 104 (citation and internal quotation marks omitted). Significantly, someone may be liable as an "employer" under the FLSA even if he or she was not personally involved in the alleged violation. *Id*. at 110 ("Nothing in the ... FLSA itself, requires an individual to have been personally complicit in FLSA violations; the broad remedial purposes behind the statute counsel against such a requirement."); *see also, id*. at 116 ("[T]he purpose of the FLSA is not to punish an employer but to remunerate aggrieved employees.") Furthermore, a defendant may be liable as an employer even if he never directly managed or personally interacted with the plaintiffs. *Id*. at 110, 116.

For an individual defendant, the question is whether he has "operational control" over the plaintiffs' employment:

> [T]o be an 'employer,' an individual defendant must possess control over a company's actual 'operations' in a manner that relates to a plaintiff's employment. It is appropriate ... to require some degree of individual involvement in a company in a manner that affects employment-related factors such as workplace conditions and operations, personnel, or compensation[.]

*Irizzary*, 722 F.3d at 109. Factors to be considered include whether the defendant has the power to hire and fire employees, whether he supervised and controlled employees' work schedules or conditions of employment, whether he determined the rate and method of payment to employees and whether he maintained employment records. *Id*. at 114-116 (referencing

factors enunciated in *Carter v. Dutchess Community College*, 735 F.2d 8 (2d Cir. 1984) ("the *Carter* factors").

*Hart*, 2014 WL 2865899 at *13.

Here, the Amended Complaint contains a series of eight factual averments concerning Blank, which, Hinckley contends, plausibly indicate that Blank is an "employer." Amended Complaint [#13] at ¶ ¶ 23-30.  For example, the pleading asserts that Blank "is primarily responsible for implementing business decisions as they pertain to the Inn, including but not limited to decisions concerning company labor guidelines, budgets, and other financial controls."[23]  Defendants contend that such allegations are mere "boilerplate" which "parrot" the language from the cases cited above, without providing any specifics about Blank's actual role in the alleged violations.[24]  However, the Court finds that such averments are sufficiently factual to plausibly state that Blank is an employer.  Accordingly, Defendants' application on this point is denied.

<u>Hinckley's Standing to Act as Class Representative for "Hourly Tipped Workers" Class and "Hourly Tipped Sub-Minimum Wage Workers" Class</u>

Defendants further contend that while Hinckley's Amended Complaint purports to assert claims on behalf of three classes of employees -- banquet service workers, hourly tipped workers and hourly tipped sub-minimum wage workers -- it cannot state a claim on behalf of the latter two categories of workers since Hinckley only worked as a banquet server, and therefore lacks standing to represent the other two classes.  In this regard, Defendants cite 12 N.Y.C.R.R. § 146-3.3, entitled "Service employee and non-service

---

[23]Amended Complaint [#13] at ¶ 25.

[24]Defs. Memo of Law [#14-1] at p. 19.

employee," and 12 N.Y.C.R.R. § 146-3.4, entitled "Food service worker."    Defendants maintain that Hinckley lacks standing, since § 146-3.3 differentiates between a "service employee" and a "food service worker."    That is, Defendants contend that Hinckley was employed as a "banquet service worker,"[25] which makes him a "food service worker," which means that he is not a "service employee" under 12 N.Y.C.R.R. § 146-3.3.    From that, Defendants reach the conclusion that a "food service worker" is necessarily not a "tipped employee" within the meaning of the Amended Complaint.    Hinckley disagrees, stating:

> Defendants' argument is not clear, but they seem to suggest that there is something mutually exclusive about working as a banquet service worker and working as a tipped employee.    They argue that because plaintiff worked as a banquet service worker, he cannot represent employees that worked as servers.    They cite no authority for this proposition.[26]

In response to Hinckley's assertion that their argument on this point is unclear, Defendants insist that their argument "is quite simple:  Plaintiff makes no allegation that he worked as a non-banquet, hourly tipped worker at the Inn."[27]

The Court agrees with Hinckley that Defendants' argument on this point is unclear. At least, the Court does not find it persuasive.  The Court also agrees that Defendants have not cited any authority to support their argument, other than their own interpretation of the subject regulations, which may or may not be being cited out of context.   In that regard, Defendants are attempting to rely upon the aforementioned distinction between "service

---

[25]Amended Complaint [#13] at ¶ 7 .

[26]Pl. Memo of Law [#24] at p. 21.

[27]Defs. Reply Memo [#25] at p. 8.

employees" and "food service workers" made in 12 N.Y.C.R.R. § 146-3.3, though they have not explained the significance of that regulation to this lawsuit.

Moreover, in the regulations upon which Defendants rely, the terms "service employee" and "food service worker" are terms of art, while the terms used in the Amended Complaint, such as "banquet service worker" and "tipped worker," appear to have been used in their every-day sense or as explained in the pleading. In that regard, as used in the Amended Complaint, the main difference between tipped banquet service workers and other tipped workers seems to be that banquet servers were paid their gratutities from service charges that were tacked onto clients' bills, as opposed to receiving their tips directly from patrons, which is significant because Hinckley contends that Defendants failed to give proper notices to patrons about the tacked-on service charges, in violation of the NYLL. Defendants nevertheless classified banquet workers at tipped employees, according to Hinckley. Furthermore, to the extent that Defendants are arguing that "Hourly Tipped Workers" and "Hourly Tipped Sub-Minimum Wage Workers," as defined in the Amended Complaint, are necessarily "non-banquet" workers,[28] the Court disagrees, since it finds no such statement in the pleading. Accordingly, Defendants' motion to dismiss on this point is denied.

Hinckley's Alternative Motion to Amend

As discussed above, the Court finds that the Second and Sixth Causes of Action fail to state an actionable claim. Hinckley alternatively requests leave to amend those claims, but the Court has some concerns. To begin with, Hinckley has already made two attempts

---

[28] See, Def. Reply Memo [#25] at p. 8 ("Plaintiff makes no allegation that he worked as a non-banquet, hourly tipped worker at the Inn.").

to plead his claims.  Further, with regard to the overtime claims, Defendants' counsel has asserted, as an officer of the Court, that Defendants have "irrefutable evidence" that Hinckley never worked more than forty hours in any week, while Hinckley has not presently identified a single specific pay period in which he did so.[29]  Nor has Hinckley otherwise explained how he intends to state claims that are sufficient.  Additionally, the Second Circuit has recognized the possibility of litigants "misusing" FLSA claims to engage in "fishing expeditions."[30]  Nevertheless,  the Court will allow Hinckley one last opportunity to plead an overtime claim and spread-of-hours claim, provided that he can do so consistently with Rule 11.

## Plaintiff's Motion for Conditional Certification of FLSA Collective Action

Hinckley has requested conditional certification of an FLSA collective action, pertaining to the First Cause of Action (FLSA Minimum-wage Claim) and the Second Cause of Action (FLSA Overtime Claim).  At oral argument, after the Court indicated that it was going to dismiss the Second Cause of Action with leave to re-plead, Plaintiff's counsel requested that the Court rule upon the motion for conditional certification as to the First Cause of Action immediately, rather than waiting for Plaintiff to re-plead the Second Cause of Action.

---

[29]Def. Reply Memo [#25] at p. 2 ("[H]e never recorded more than forty hours per week during his employment with the Inn.  The payroll data submitted with Defendants' initial moving papers clearly demonstrates this irrefutable fact.").

[30]*See, Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d at  86 (Alluding to " the possible use by lawyers representing plaintiffs in such cases of standardized, barebones complaints against any number of possible defendants about whom they have little or no evidence of FLSA violations for the purpose of identifying a few of them who might make suitable defendants—which is to say, the ability to engage in 'fishing expeditions.'").

Hinckley requests that the Court conditionally certify an FLSA collective action, and direct expedited notice to "current and former banquet service employees employed between February 27, 2013[, which is three years prior to the date this action was filed,] and the present." Notice of Motion [#17].

As to the First Cause of Action, Hinckley contends that the Inn had a policy of improperly paying sub-minimum wages to "banquet service employees," and taking the tip-credit allowance, even though banquet service employees were not properly classified as tipped employees.   On that point, Hinckley contends that the mandatory gratuity/service charge, that the Inn tacked onto customers' bills and then partially distributed to workers, was not a true "tip" under the FLSA, which disqualified the Inn from taking the tip credit. Hinckley further alleges that the Inn had a policy of failing to provide banquet service employees with the proper tip-credit notice, in violation of the FLSA.   According to Hinckley, the Inn's inability to properly claim the tip credit means that the Inn actually paid its employees sub-minimum wages.   In support of the motion, Hinckley has submitted his own affirmation [#18-2], as well as an essentially-identical affirmation [#23] from a co-worker, Benjamin Tomion ("Tomion").   Hinckley's affidavit states, in pertinent part:

> I am aware from personal observation and discussions with my co-workers that the Inn's policy was to pay all banquet service workers below minimum wage plus a portion of the mandatory service charge added to bills for the banquet events. . . .   Despite being paid less than sub minimum wage, I did not receive any explanation from Defendants explaining why I was paid less than minimum wage or how the service charge was distributed to banquet service employees.

Hinckley Aff. [#18-2] at ¶ ¶ 5, 10.   Tomion's affidavit makes the same assertions.   *See*, Tomion Aff. [#23] at ¶ ¶ 5, 10.

Defendants oppose the application, as it concerns the First Cause of Action.  With regard to the FLSA minimum-wage claim arising from the Inn's policy of collecting mandatory service charges from customers, rather than having customers pay tips directly to banquet servers, Defendants contend that such  claim is not appropriate for conditional certification because "when gratuities from banquets are included in [Hinckley's] compensation . . . he earned well in excess of the non-tipped minimum wage."[31]  With regard to the FLSA minimum-wage claim arising from improper notice, Defendants maintain that employees were notified that the Inn was taking the tip credit.  Further, Defendants maintains that Hinckley's and Tomion's affidavits are "anemic at best and fall[ ] woefully short of establishing the existence of an unlawful company-wide policy."[32]  Alternatively, Defendants' contend that Hinckley's factual assertions are "patently false."[33]  Defendants further indicate that these minimum-wage claims are not appropriate for an FLSA collective action, because each class member's claim "would have to be determined on an individualized basis."[34]

Unlike class certification motions under Rule 23, motions for preliminary certification of FLSA collective actions are more easily supported, and are designed to be made prior to discovery.

> A majority of district courts, including those within the Second Circuit, employ a two-step process to determine whether a lawsuit should proceed as an FLSA collective action.

---

[31]Defs. Memo of Law [#26] at p. 3.

[32]Defs. Memo of Law [#26] at p. 3.

[33]Defs. Memo of Law [#26] at p. 5.

[34]Defs. Memo of Law [#26] at p. 15.

At the first step—the notice stage—the court determines, based on the pleadings, affidavits, and declarations, whether the named plaintiffs have demonstrated that the employees they seek to notify are "similarly situated." The evidentiary standard is lenient at this stage, the plaintiffs need make only a modest factual showing that they and the other putative collective action members together were victims of a common policy or plan that violated the law.   A plaintiff's burden on this step is minimal, especially since the determination that potential plaintiffs are similarly situated is merely a preliminary one.

The second step occurs after discovery is complete, when the court examines the evidentiary record and makes a factual finding as to whether the conditionally certified plaintiffs are, in fact, similarly situated to the lead plaintiffs. If the court determines the opt-in plaintiffs are not similarly situated, the court will decertify the class, the claims of the opt-in plaintiffs will be dismissed without prejudice, and the class representatives may proceed to trial on their individual claims.  Alternatively, if the class description is shown to require modification, that can be accomplished at the second tier inquiry.

*Gordon v. Kaleida Health*, No. 08–CV–378S, 2009 WL 3334784 at *3-4  (W.D.N.Y. Oct. 14, 2009) (citations, internal quotation marks and footnote omitted); *see also, Myers v. Hertz Corp.*, 624 F.3d 537, 554-555 (2d Cir. 2010) (Indicating that while the two-step process described above is "not required by the terms of the FLSA or the Supreme Court's cases," it is nonetheless "sensible.").

According to the Second Circuit, plaintiffs may demonstrate that they and the potential opt-in plaintiffs "together were victims of a common policy or plan that violated the law,"

by making some showing that there are other employees who are similarly situated with respect to their job requirements and with regard to their pay

29

provisions [35] . . . .   The modest factual showing cannot be satisfied  simply by unsupported assertions, but it should remain a low standard of proof because the purpose of this first stage is merely to determine whether similarly situated plaintiffs do in fact exist.

*Myers v. Hertz Corp.*, 624 F.3d at 555.   "[A]t this first stage, the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations[, and a]ccordingly, an FLSA collective action may be conditionally certified upon even a single plaintiff's affidavit." *Escobar v. Motorino E. Vill. Inc.*, No. 14 CIV. 6760 KPF, 2015 WL 4726871 at *2 (S.D.N.Y. Aug. 10, 2015) (citations and internal quotation marks omitted); *see also, id*. ("Defendants oppose conditional certification largely by attacking the credibility of the declarants or by offering contradictory factual assertions, including by the declaration of Motorino's general manager [and]...payroll records, but such evidence still goes to the merits rather than the propriety of conditional certification and notice [.]") (citation and footnote omitted).

As already discussed, Hinckley's First Cause of Action purports to state an FLSA minimum-wage claim, on the theory that the Inn was not entitled to take the tip credit. Hinckley indicates, first, that the Inn's practice of collecting mandatory gratuities/service charges from customers and distributing them to banquet workers disqualified the Inn from claiming the tip credit, since such compulsory service charges are not tips.   Additionally,

---

[35]Defendants suggest that in order for Hinckley to show that he is similarly situated to the other members of the proposed collective action, he must do more than simply show that they were all subject to the same unlawful policy. *See*, Defs. Memo of Law [#26] at pp. 7-8 ("[I]n order to meet his burden, Plaintiff must 'demonstrate that [he] and potential plaintiffs together were victims of a common policy or plan that violated the law,' *and* the Court must be satisfied 'that there is a basis to conclude that questions common to a potential group of plaintiffs would predominate a determination of the merits in this case." (citing *Mike v. Safeco Ins. Co. of Am.*, 274 F.Supp.2d 216, 220 (D.Conn. 2003) (emphasis added).  However, as the Court in *Mike v. Safeco*  explained, a plaintiff demonstrates that class members are similarly situated and that common questions predominate precisely by showing that the potential collective members were victims of a common policy of plan. *Mike v. Safeco*, 274 F.Supp.2d at 220.

Hinckley contends that the Inn failed to give proper notice of the tip credit, which also prevented the Inn from claiming the tip credit.  On this point, Hinckley states:

> [D]efendants' wage notices do not comply with tip credit notice requirements under the FLSA. 29 U.S.C. § 203(m).  Nowhere on the wage notices are employees informed that (1) the cash wage and employees' tips, taken together, are at least equal to the statutory minimum wage, and (2) the employer has informed the tipped employees of the provisions of the section of the FLSA permitting the tip credit.

Pl. Memo of Law [#17-1] at p. 8.[36]

The statute to which Hinckley cites, 29 U.S.C. § 203(m), states, in pertinent part, as follows:

> In determining the wage an employer is required to pay a tipped employee, the amount paid such employee by the employee's employer shall be an amount equal to--
>
> (1) the cash wage paid such employee which for purposes of such determination shall be not less than the cash wage required to be paid such an employee on August 20, 1996; and
>
> (2) an additional amount on account of the tips received by such employee which amount is equal to the difference between the wage specified in paragraph (1) and the wage in effect under section 206(a)(1) of this title.
>
> The additional amount on account of tips may not exceed the value of the tips actually received by an employee. The preceding 2 sentences shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection[.]

29 U.S.C. § 203(m) (emphasis added).  It has been held that in order to comply with this notice provision, an employer must tell a tipped employee three things:

---

[36]Hinckley further alleges, in conclusory fashion, that the Inn improperly retained a portion of those compulsory service charges.  However, Hinckley has presented no evidence to support that assertion.

(a) in anticipation of tips the employer will pay less than the minimum wage;
(b) how much the cash wage will fall short of the current minimum wage; and
(c) if tips plus the cash wage do not at least match the current  minimum wage, the employer must make up the difference.

*Schaefer v. Walker Bros. Enterprises*, 829 F.3d 551, 556–57 (7th Cir. 2016).[37]

The Court finds that Hinckley has made the necessary minimal showing required to warrant conditional certification.  To begin with, it is undisputed at this stage of the litigation that the Inn classified banquet workers as tipped employees and took a tip-credit allowance.  Further, it is undisputed that the Inn collected a compulsory service charge from customers, which it distributed to banquet workers as a "gratuity," even though such compulsory charges do not qualify as tips under the FLSA.  Further, Both Hinckley and Tomion claim that they never received "any explanation" for why they were being paid less than the minimum wage, which indicates that the Inn did not "inform" them of the "provisions" of 29 U.S.C. § 203(m).  Hinckley and Tomion have also submitted copies of the written form notices that the Inn provided to them at the time of their hire, which do not appear to set forth all of the information required by 29 U.S.C. § 203(m).[38]

Defendants contend that there was no minimum-wage violation because, even assuming that the Inn improperly treated compulsory service charges as tips, the banquet workers ultimately received payment that exceeded the minimum wage, in the form of the

---

[37]The full quote from the Seventh Circuit is as follows: "Three things are apt to matter most to employees at establishments such as these defendants: (a) in anticipation of tips the employer will pay less than the minimum wage; (b) how much the cash wage will fall short of the current minimum wage; and (c) if tips plus the cash wage do not at least match the current  minimum wage, the employer must make up the difference. We think that a person told these things has been adequately 'informed' for the purpose of the statute, during the time before the Department of Labor elaborated by regulation." *Schaefer v. Walker Bros. Enterprises*, 829 F.3d at 556–57.

[38]Roger Miller Aff., Exs. B [#26-5] & E [#26-8].

sub-minimum hourly wage plus the aforementioned "gratuities" taken from the compulsory service charge.  In that regard, Defendants argue that while 29 C.F.R. § 531.55 indicates that compulsory service charges are not tips, it also provides that "[w]here such sums are distributed by the employer to its employees . . . they may be used in their entirety to satisfy the monetary requirements of the Act."  Defendants also maintain that the written notices that were provided to Hinckley and Tomion were sufficient under 29 U.S.C. § 203(m), and they have additionally submitted affidavits from four employees who claim that the Inn "informed them of the tip credit" orally and in writing.[39]   However, these arguments involve the merits of Hinckley's claim, and Defendants will have an opportunity to address them at a later time.  At present, the Court finds that Hinckley has met the low threshold required for conditional certification.

Defendants also object to the following features of  Hinckley's proposed notice: 1) it proposes to notify class members who worked at the Inn going back three years from the date of the commencement of the action, rather than from the date of issuance of the notice; 2) it proposes to notify class members who worked at the Inn going back three years, based on the three-year limitations period for willful FLSA violations, rather than the two-year limitations period for non-willful violations; 3)  it proposes to have Defendants post the notice at the Inn and mail the notice to class members, when mailing alone is sufficient; 4) it improperly requests that Defendants provide personal information about collective members', beyond what is needed to contact  them;  5) it does not establish a deadline by

---

[39] *See, e.g.*, Declaration of Ashley Johnson [#26-2] ("I was informed of the minimum wage, the regular and overtime hourly rate and that I would be paid, and the amount of the tip credit.  I was also informed and understood that, if I did not earn sufficient tips so that I earned at least the non-tipped minimum wage per hour, the Inn would pay me the difference for any such amounts.").

which employees have to opt in; and 6) its text should be revised in certain instances. Hinckley opposes these arguments.

At the outset, Hinckley's request to send the notice to banquet workers who were employed within three years prior to the commencement of this action is granted, as this is a routine practice within this Circuit. *See, e.g., Guan v. Long Island Bus. Inst., Inc.*, No. 15CV2215CBAVMS, 2016 WL 4257549, at *5 (E.D.N.Y. Aug. 11, 2016) ("[A]lthough notice would normally be provided to those employed within three years of the date of the notice, courts frequently permit notice to be keyed to the three-year period prior to the filing of the complaint, with the understanding that challenges to the timeliness of individual plaintiffs' actions will be entertained at a later date.") (citation and internal quotation marks omitted); *see also, Fernandez v. Sharp Mgmt. Corp.*, No. 16-CV-0551 (JGK)(SN), 2016 WL 5940918, at *6 (S.D.N.Y. Oct. 13, 2016) ("[B]ecause equitable tolling issues often arise for prospective plaintiffs, courts frequently permit notice to be keyed to the three-year period prior to the filing of the complaint, with the understanding that challenges to the timeliness of individual plaintiffs' actions will be entertained at a later date.") (citation and internal quotation marks omitted).

Regarding the type of notice to be given, Hinckley contends that notice should be sent by first-class mail and posted at the Inn, while Defendants maintain that first-class mail alone is sufficient.  The Court will direct that the notices be mailed and posted, as this, too, is a routine practice in this Circuit, and Defendants have not shown that posting will be unduly burdensome. *See, e.g., Varghese v. JP Morgan Chase & Co.*, No. 14 CIV. 1718 (PGG), 2016 WL 4718413, at *9 (S.D.N.Y. Sept. 9, 2016) ("Courts routinely approve requests to post notice on employee bulletin boards and in other common areas, even

where potential members will also be notified by mail.") (quoting *Iriarte v. Cafe 71. Inc.*, No. 15 Civ. 3217 (CM), 2015 WL 8900875, at *7 (S.D.N.Y. Dec. 11, 2015); other citations omitted).

Hinckley further seeks an order directing Defendants to provide the "name, current or last known address, phone number, job title, dates of employment, date of birth and e-mail address" of "each employee."[40]   Defendants object, and contend that they should only have to provide the employees' names and last-known addresses.   In similar situations, Courts commonly require employers to provide basic contact information, but not more private information, such as dates of birth. *See, e.g., Acevedo v. WorkFit Medical LLC*, No. 14–CV–06221 EAW, 2014 WL 4659366 at *11-12 (W.D.N.Y. Sep. 17, 2014) (collecting cases).   Here, the Court finds that it is sufficient for Defendants to provide the following information: names, last known addresses, telephone numbers, email addresses and dates of employment.   Defendants shall provide this information to Plaintiff's counsel within twenty days of the date of this Decision and Order.

Regarding the deadline for employees to opt in to this action, Hinckley did not propose a specific opt-in period, while Defendants contend that the period should be limited to sixty days.   There being no objection, the notice shall provide for a sixty-day opt-in period, calculated from the date of the notice. *See, e.g., Sanchez v. Salsa Con Fuego, Inc.*, No. 16CV473RJSBCM, 2016 WL 4533574, at *7 (S.D.N.Y. Aug. 24, 2016) ("The 60-day opt-in period requested by plaintiffs, following conditional certification, is consistent with FLSA practice in this Circuit.") (citations and internal quotation marks omitted).

---

[40]Pl. Memo of Law [#17-1] at p. 9.

Lastly, Defendants request that certain edits be made to the proposed notice form, though with little explanation.[41]  Most notably, Defendants ask the Court to change the terms "banquet service employee" and "banquet service staff" to "*tipped* banquet service employee" and "*tipped* banquet service staff."   Defendants also ask the Court to insert language emphasizing that the Inn denies any wrongdoing, and that no adverse findings have been made against the Inn.  Hinckley responds by stating, inter alia, that the "tipped" designation is unnecessary, since all banquet servers were treated as tipped employees. However, Defendants indicate that some banquet employees were strictly involved in setting up the banquets, for which they received no tips, and were not servers.  Consequently, to avoid any confusion, the Court agrees with Defendants that the notice should refer to "tipped" employees.

For purposes of clarity, the Court further directs that the first page of the notice add the language, "This lawsuit is currently in the early pretrial stage.  The Court has made no findings on the merits of the claims raised by Plaintiff or the Inn's various defenses."  To fairly set forth Defendants' position, the Court also directs that Defendants' proposed changes under the heading, "How does the Inn respond?," be added.  The Court further directs that the language, "The Inn denies any wrongdoing and/or liability and denies that any employee was underpaid for his or her work," be added under the aforementioned heading, "How does the Inn respond?,"  rather than on the first page of the notice. Otherwise, the Court approves the proposed notice as is.

---

[41]See, Docket No. [#26] at p. 21 and Docket No. [#.

CONCLUSION

Defendants' motion to dismiss [#14] is granted in part and denied in part.  The Second, Sixth and Seventh claims are dismissed in their entirety, and any portion of the Fourth and Fifth Causes of Action purporting to assert a stand-alone claim for failure to provide an annual wage notice is also dismissed; Defendants' application is otherwise denied.  Defendants' alternative motion for summary judgment is denied.  Plaintiff is granted leave to re-plead the Second and Sixth Causes of Action, provided that he can do so consistent with Rule 11.  Any such amended pleading, which shall completely replace the current pleading, shall be filed within twenty days of the date of this Decision and Order.  Plaintiff's application [#17] for conditional certification of an FLSA collective action is granted as to the First Cause of Action, but is otherwise denied, and the notice shall be amended as indicated above.

SO ORDERED.

Dated:          November 2, 2016
                Rochester, New York

                                        /s/ Charles J. Siragusa
                                        CHARLES J. SIRAGUSA
                                        United States District Judge